# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN BELLEFLEUR,

    Plaintiff,                                  Case No. 11-13155

v.                                             Hon. Gerald E. Rosen

THE HAYMAN COMPANY, THE HAYMAN
COMPANY DISABILITY PLAN(S), and the
ADMINISTRATOR AND FIDUCIARIES OF THE
HAYMAN COMPANY DISABILITY PLAN(S),

    Defendants.
_____/

## OPINION AND ORDER REGARDING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff John Bellefleur commenced this action in this Court on July 21, 2011, challenging the refusal of the Defendant corporation, The Hayman Company, to pay him benefits under a short- and long-term disability plan offered by The Hayman Company to its employees.[1]  Plaintiff asserts that he is entitled to these benefits as an employee of the

---

[1] Apart from The Hayman Company, Plaintiff has named the disability benefit plan and the administrator and fiduciaries of this plan as defendants in this suit.  For convenience, however, the Court will refer to The Hayman Company as the sole Defendant throughout the

Defendant corporation, but Defendant maintains that Plaintiff actually is employed by a separate affiliate of Defendant, U.S. Suburban Building Services, that does not offer disability benefits to its employees. This Court's jurisdiction over this suit rests upon Plaintiff's assertion of claims arising under the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Through the present motion filed on April 27, 2012, Plaintiff seeks a determination in his favor as a matter of law that he was employed by Defendant during the time period giving rise to his claims for disability benefits. Armed with this ruling, Plaintiff will then seek an award of the benefits allegedly owed to him under Defendant's disability benefit plan, as well as an award of civil penalties arising from Defendant's alleged failure to provide him with the pertinent documents for its disability plan. In support of this motion, Plaintiff points to various indicia that he was employed by Defendant, and not an affiliated company, including (i) evidence that the negotiations leading to his hiring were conducted exclusively with Defendant's employees and officers, (ii) his supervision on the job by one of Defendant's employees, and (iii) various documents in his personnel file that reference only the Defendant corporation, and not any affiliates. In response, Defendant contends that Plaintiff's status as an employee of its affiliate, and not Defendant itself, is best evidenced by the fact that Plaintiff's paychecks and Form W-2 during the pertinent time period were issued by the affiliate rather than Defendant.

---

remainder of this opinion, because all of the defendants are represented by the same counsel and raise the same arguments as to the matters presently before the Court.

Plaintiff's motion has been fully briefed by the parties. Having reviewed the parties' briefs in support of and opposition to this motion, as well as the accompanying exhibits, the Court finds that the relevant allegations, facts, and legal issues are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Plaintiff's motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the reasons discussed below, the Court finds that the parties' dispute concerning Plaintiff's status as an employee of Defendant is not yet ripe for judicial determination, and that this matter should instead be remanded to the administrator of Defendant's disability benefit plan for an initial determination whether Plaintiff is eligible for benefits under this plan.

## II. FACTUAL BACKGROUND

In light of the Court's determination that this matter should be remanded for further administrative proceedings, a brief summary of the facts will suffice for present purposes. Defendant The Hayman Company is a Michigan corporation that is engaged in the business of acquiring and managing parcels of real property located throughout the United States. Defendant is headquartered in Troy, Michigan, and according to the company's secretary and treasurer, Alan J. Hayman, the majority of its employees work at this Troy location. (*See* Defendants' Response, Ex. C, Alan Hayman Aff. at ¶ 4.) An affiliated company, U.S. Suburban Building Services, Inc. ("U.S. Suburban"), handles the day-to-day on-site operations and management of the properties owned or managed by

3

Defendant, and its employees work on-site at these properties. (*See id.* at ¶¶ 5-6.)

In the summer of 2010, Plaintiff responded to a job listing for a senior property manager in the Chicago area. Shortly thereafter, he was contacted by one of Defendant's officers, Alan Hayman, who informed him about the company's history and the position to be filled. Plaintiff then met with another company official, John Cohen, and traveled to Defendant's headquarters in Michigan to meet with other company employees and discuss his possible employment with the company. Following a round of e-mail negotiations with Defendant's regional vice president, Dan Rees, Plaintiff was hired as a senior property manager on or around August 23, 2010, with responsibility for managing commercial properties located in Chicago.

According to Plaintiff, throughout the discussions and negotiations leading to his hiring, the individuals he met and corresponded with mentioned only the Defendant corporation, The Hayman Company, and not any affiliates or related entities such as U.S. Suburban. Likewise, the employment application and other paperwork completed by Plaintiff at the time of his hiring referenced only Defendant, (*see* Plaintiff's Motion, Ex. G, Plaintiff's personnel file), and he was given an employee handbook captioned "the hayman company" that included no references to U.S. Suburban or any other entity apart from Defendant, (*see* Plaintiff's Motion, Ex. H, Employee Handbook). In addition, the vision, life, dental, and health insurance plans in which Plaintiff has been enrolled during the course of his employment all have identified Defendant as the employer and plan sponsor. Finally, throughout his employment, Plaintiff's direct supervisor has been Dan

4

Rees, an employee of Defendant who reports to Alan Hayman, a part-owner and officer of the Defendant corporation.

Against these various indicia of Plaintiff's status as an employee of Defendant, Defendant points to other evidence suggesting that Plaintiff was employed by Defendant's affiliate, U.S. Suburban. First and foremost, Plaintiff's paychecks were issued by U.S. Suburban, and the Form W-2 he received for the 2010 tax year listed U.S. Suburban as his employer. In addition, Plaintiff's supervisor, Dan Rees, testified at his deposition that "to the best of [his] recollection," he advised Plaintiff at the time of his hiring that he would be employed by U.S. Suburban, which Rees identified as a "payroll service company" that paid all of the employees who worked on-site at the various properties owned or managed by Defendant. (Plaintiff's Motion, Ex. E, Rees Dep. at 12.)[2] More generally, Alan Hayman has stated in an affidavit that the majority of Defendant's employees work at the company's headquarters in Troy, Michigan, while those individuals (such as Plaintiff) who work on-site at Defendant's properties are considered employees of U.S. Suburban. (Defendant's Response, Ex. C, Alan Hayman Aff. at ¶¶ 4-6.)

In May of 2011, Plaintiff learned that he had a brain aneurism that required surgery. According to Plaintiff, he spoke at the time to Rees, who assured him that he

---

[2]According to Plaintiff, Rees advised him only that U.S. Suburban was the entity that was "cutting [his] checks," and did not further elaborate as to the relationship between Defendant and U.S. Suburban or the role of this latter entity in managing Defendant's properties. (Plaintiff's Motion, Ex. C, Plaintiff's Dep. at 55-57.)

was covered by a disability insurance policy that Defendant provided for its employees. (Plaintiff's Dep. at 58-60.)[3] Following his surgery, however, Plaintiff was told that he was not entitled to benefits under Defendant's disability plan, because this plan covered only Defendant's employees and Plaintiff was considered an employee of Defendant's affiliate, U.S. Suburban.[4]

In light of this determination that it was not Plaintiff's employer, Defendant allegedly refused to accept or process Plaintiff's claim for disability benefits. This lawsuit followed, with Plaintiff seeking the benefits allegedly owed to him under the disability plan offered by Defendant to its employees, as well as an award of damages arising from Defendant's alleged refusal to honor Plaintiff's request for copies of the pertinent documents for this disability plan.

---

[3]Rees has testified, in contrast, that he could not recall any such discussion with Plaintiff concerning the availability of disability insurance to cover him. (*See* Rees Dep. at 17-18.)

[4]The disability plan offered by Defendant included an option for coverage of the employees of Defendant's affiliated companies, such as U.S. Suburban, but it is undisputed that Defendant did not elect this additional coverage.

### III.  ANALYSIS

A.    The Standards Governing Plaintiff's Motion

Through the present motion, Plaintiff seeks an award of summary judgment in his favor on a threshold issue upon which his claim for disability benefits depends:  namely, his eligibility for these benefits as an employee of the Defendant corporation.[5]  Under the pertinent Federal Rule, summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  In addition, where a moving party — here, Plaintiff — seeks an award of summary judgment in his favor on an issue as to which he bears the burden of proof, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

---

[5]Plaintiff's underlying claim for benefits, as set forth in Count II of his complaint, ordinarily would not be resolved under summary judgment principles, but instead would be addressed under the guidelines set forth by the Sixth Circuit in *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998).  As explained below, however, the Court has determined that Plaintiff's claim for benefits is not yet ripe for judicial review.  Accordingly, the *Wilkins* guidelines need not be applied here.

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.     This Matter Must Be Remanded So That the Claims Administrator for Defendant's Disability Plan May Exercise Its Discretionary Authority to Interpret the Terms of the Plan.**

In Count II of his complaint, Plaintiff seeks an award of benefits allegedly due to him under the short- and long-term disability plan (the "Plan") offered by Defendant to its employees. In order to establish his entitlement to these benefits, Plaintiff must show that he is an "employee" of Defendant as this term is defined in the Plan, and he attempts to meet this burden by pointing to various indicia of his status as Defendant's employee. Defendant, on the other hand, insists that Plaintiff should be deemed an employee of U.S. Suburban, largely by virtue of the fact that this affiliate issued Plaintiff's paychecks. As

discussed below, the Court finds that the resolution of this issue turns upon the proper interpretation of the Plan, a task that must be performed in the first instance by the claims administrator for the Plan before the matter is amenable to judicial review.

To read the parties' briefs, one might conclude that there is very little, if any, case law to govern the Court's inquiry into Plaintiff's employment status.[6] In fact, a number of courts have weighed in on the standards for determining an individual's eligibility for benefits under an ERISA plan offered by his putative employer. This inquiry begins with the language of ERISA itself, which provides that a plaintiff who seeks an award of plan benefits "must be either a 'participant' or a 'beneficiary' of an ERISA plan." *Wolf v. Coca-Cola Co.,* 200 F.3d 1337, 1340 (11th Cir. 2000) (citing 29 U.S.C. § 1132(a)(1)). The statute, in turn, defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). In light of this statutory language, the Eleventh Circuit has summarized the two-step inquiry governing eligibility for benefits as a "participant":

> ERISA thus imposes two requirements for participant status. First, the plaintiff must be an employee. Second, the plaintiff must be[,] according to the language of the plan itself, eligible to receive a benefit under the plan. An individual who fails on either prong lacks standing to bring a claim for benefits under a plan established pursuant to ERISA.

---

[6]Indeed, Defendant's brief lacks any citation to any case law addressing the substantive issues raised in Plaintiff's motion, apart from its attempts to distinguish three cases cited in Plaintiff's initial brief.

9

*Wolf,* 200 F.3d at 1340 (internal quotation marks and citation omitted).

In *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 112 S. Ct. 1344 (1992), the Supreme Court addressed the first prong of this inquiry — namely, the standards for determining whether an individual is an "employee" within the meaning of ERISA. As observed by the Court, the statute's definition of an "employee" — *i.e.,* that "[t]he term 'employee' means any individual employed by an employer," 29 U.S.C. § 1002(6) — "is completely circular and explains nothing." *Darden,* 503 U.S. at 323, 112 S. Ct. at 1348. Accordingly, the Court elected to "adopt a common-law test for determining who qualifies as an 'employee' under ERISA," as it had done in other contexts where a federal statute "does not helpfully define" this term. *Darden,* 503 U.S. at 322-23, 112 S. Ct. at 1348. The Court then outlined the pertinent considerations under this common-law test:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional duties to the hired party; the extent of the hiring party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden,* 503 U.S. at 323-24, 112 S. Ct. at 1348 (quoting *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 751-52, 109 S. Ct. 2166, 2178-79 (1989)).

10

In this case, neither party has applied this common-law test of "employee" status to the record of Plaintiff's hiring and employment, so the Court has been left to its own devices. Many of the facts here seemingly would support a finding that Plaintiff was Defendant's employee under this common-law standard: Plaintiff was selected for hire by officials of the Defendant corporation; was under the direct supervision of one of Defendant's employees, Dan Rees; performed duties integral to Defendant's property management operations; and received some employee benefits under plans offered by Defendant to its employees. On the other hand, Plaintiff was paid by U.S. Suburban, rather than Defendant; the Form W-2 issued to him for the 2010 tax year identified U.S. Suburban as his employer; and he, like other employees of U.S. Suburban, performed his duties on-site at Defendant's properties, rather than at Defendant's office in Michigan.

Nonetheless, the Court finds it unnecessary at the present juncture to decide how the record of Plaintiff's employment should be analyzed under *Darden*'s common-law test of "employee" status. Regardless of the outcome of this inquiry, there would still remain the question whether Plaintiff is eligible for benefits under the terms of the Plan. As the courts have explained, even though an individual might satisfy the common-law standard for "employee" status, "nothing in ERISA requires a plan to extend benefits to every common law employee." *Kolling v. American Power Conversion Corp.,* 347 F.3d 11, 14 (1st Cir. 2003); *see also Hensley v. Northwest Permanente P.C. Retirement Plan & Trust,* 258 F.3d 986, 1001 (9th Cir. 2001); *Wolf,* 200 F.3d at 1340-42; *Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan,* 102 F.3d 1435, 1439-

11

40 (7th Cir. 1996). Rather, in determining eligibility for benefits, "it is the language of the Plan, not common law status, that controls," *Kolling,* 347 F.3d at 14, and a plan need not "use the term 'employee' in the same way it is used in the statute" or "include all categories of employees" within its coverage, *Trombetta,* 102 F.3d at 1440 (internal quotation marks and citation omitted).[7]

Turning to the Plan here, it provides short- and long-term disability coverage to "[a]ll Employees working 24-30 hours per week." (Plaintiff's Motion, Ex. A, Disability Plan at 1, 2.) The Plan defines "Employer" as "any employer included under the Group Contract and any subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract,"[8] and "Employee," in turn, is defined as "a person who is in active employment with the Employer for the minimum hours requirement." (*Id.* at 40.) The Plan further provides that "[a]ctive employment means you are working for your Employer for earnings that are paid regularly and that you are performing the

---

[7]In its response to Plaintiff's motion, Defendant makes much of this point that a sponsoring employer has the freedom to offer ERISA benefits to some employees but not others. And, indeed, it is true (and Plaintiff does not dispute) that Defendant could lawfully elect to provide disability benefits only to its own employees, and not the employees of its affiliates such as U.S. Suburban. As Plaintiff observes, however, this is utterly beside the point here, because Plaintiff's claimed entitlement to benefits does not rest upon the proposition that he should be eligible for disability coverage as an employee of U.S. Suburban. Rather, Plaintiff asserts that he qualifies for benefits as an employee of Defendant. As discussed immediately below, nothing in the language of the Plan purports to distinguish among categories of Defendant's employees; instead, coverage is uniformly made available to all employees of the Defendant corporation. The crucial question here, then, is how the Plan defines the universe of covered "employees" of this corporation.

[8]As noted earlier, it is undisputed that Defendant never made a request to Prudential that any subsidiary or affiliate be included within the coverage provided under the Plan.

material and substantial duties of your regular occupation." (*Id.* at 39.) Juxtaposing these provisions, it appears that Plaintiff would qualify as an "Employee" under the Plan if he worked for Defendant for regularly-paid earnings, performed the material and substantial duties of his occupation, and satisfied the minimum hour requirement.

These Plan provisions give little (if any) more guidance than the ERISA definition of an "employee" that the Supreme Court aptly described as "completely circular." *Darden,* 503 U.S. at 323, 112 S. Ct. at 1348. Under the Plan, an individual qualifies as an "Employee" if he is "in active employment with the Employer," and the definition of "active employment" rather unhelpfully states that this individual must be "working for [his] Employer for earnings that are paid regularly" and must be "performing the material and substantial duties of [his] regular occupation." (Plan at 39-40.) To the extent that Defendant might argue that the reference to "earnings" in the Plan's definition of "active employment" bolsters its claim that Plaintiff should be deemed an "employee" of the affiliate who issued his paycheck, nothing in the Plan itself forges such a direct link between these earnings and the entity that pays them. Certainly, the Plan language at issue here does not speak with the same clarity as plan provisions in other cases that defined the universe of covered employees by express reference to the particular business unit that paid the covered workers' wages. *See, e.g., Edes v. Verizon Communications, Inc.,* 417 F.3d 133, 137 (1st Cir. 2005) (noting that the plans in that case "explicitly exclude[d] from participation employees who were not 'paid directly' by [the defendant employer], without regard for their common-law employment status"). Consequently, the

13

language of the Plan does not mandate the conclusion urged by Defendant — namely, that Plaintiff is ineligible for treatment as an "employee" under the Plan because his paychecks were issued by another entity, U.S. Suburban.

Yet, neither can it be said that the language of the Plan compels a ruling in Plaintiff's favor as a matter of law. As explained, the Plan's definition of an "employee" suffers from much the same circularity as the ERISA statute's definition of this term. Thus, it is perhaps tempting to construe "employee" status under the Plan by resort to the common-law standard adopted by the Supreme Court in *Darden* for determining "employee" status under ERISA. The courts have held, however, that an ERISA plan administrator is not constrained to apply *Darden*'s common-law test in determining eligibility for plan benefits as an "employee," even if the plan's definition of an "employee" is materially indistinguishable from ERISA's definition of this term. *See, e.g., Hensley,* 258 F.3d at 991, 1001 (noting that the plan in that case defined a "Qualified Employee" as "any employee of Employer," but rejecting the district court's conclusion that the plan administrator was "required, as a matter of law, to apply the federal common law definition of employee"); *Trombetta,* 102 F.3d at 1439 ("[T]here is no requirement that the phrase ['employed by an employer'] carry the same meaning under the [defendant] plan that the Supreme Court has afforded a similar phrase in the statute."). Rather, a plan administrator "is free to define the terms in its plan however it wishes," provided that this interpretation passes muster under the applicable standard for judicial review of the administrator's decision. *Trombetta,* 102 F.3d at 1439-40; *see also Kolling,*

14

347 F.3d at 14 ("Where, as here, the Plan adopts a circular definition of employee — 'Employee of the Employer' — the Plan administrator has the discretion reasonably to determine the meaning of that phrase."); *Hensley,* 258 F.3d at 1001 (explaining that "plan administrators should be given the full benefit of the discretion afforded to them by their respective plans in interpreting plan terms, be they defined or undefined, with the reasonableness of those interpretations being evaluated against the relevant factual and legal backgrounds").

Unfortunately, this key datum is absent from the record in this case, because there is no evidence that the Plan's definition of an "employee" has been construed by the party with the authority to do so. An "ERISA Statement" accompanying the Plan identifies the Prudential Insurance Company of America as the "Claims Administrator," with the "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." (Plaintiff's Motion, Ex. A, ERISA Statement at 1.) So far as the record reveals, Prudential was never called upon to carry out this interpretative function or to determine Plaintiff's eligibility for benefits, because — according to the complaint, at least — Defendant arrogated to itself the authority to decide this question of eligibility, and then refused to permit Plaintiff to even apply for disability benefits under the Plan. Against this backdrop, where the claims administrator has never been asked to address or resolve the threshold question of Plaintiff's eligibility for benefits, there is nothing for this Court to review.

Under similar circumstances, where an ERISA plaintiff has been deprived of the

15

opportunity for a full and fair review of his claim by the plan administrator, or where no reasoned decision has been provided for the denial of his claim, the courts have found it appropriate to either remand the case to the plan administrator or conduct a *de novo* review of the plaintiff's claim on the merits. *See Vanderklok v. Provident Life & Accident Insurance Co.,* 956 F.2d 610, 616-17 (6th Cir. 1992); *Pearce v. Chrysler LLC Pension Plan,* No. 10-14720, 2012 WL 750156, at *4-*5 (E.D. Mich. Jan. 27, 2012); *Badalament v. United of Omaha Life Insurance Co.,* No. 05-74932, 2007 WL 1006908, at *10 (E.D. Mich. Mar. 30, 2007). In this case, a *de novo* review would be neither appropriate nor feasible, as it would require this Court to construe and apply the terms of the Plan without the benefit of (i) the views of the claims administrator, Prudential, that is given "sole discretion" under the Plan to perform these functions, or (ii) any information as to how this claims administrator might have resolved this or analogous eligibility issues in the past, whether under this Plan or under similarly worded plans or insurance contracts it has issued to other employers.

There is no evident reason for the Court to step into this void, where the claims administrator charged with this task presumably stands ready and able to make the initial decision as to Plaintiff's eligibility for disability benefits under the Plan. Under the "scant record" presented here, a "remand to the administrator is the only appropriate disposition of the matter," because "[n]o determination as to [Plaintiff's] eligibility for coverage is possible on the present record," and a remand will better afford Plaintiff the "opportunity for full consideration of his claim for benefits via the same channels that

would have been available to him if his claim form had been promptly submitted" to the claims administrator in the first instance. *Badalament,* 2007 WL 1006908, at *10. Once this opportunity has been given to Plaintiff and a reasoned decision has been made on his claim for disability benefits, he can then seek any desired judicial review of this decision, and the Court will then have a sufficient record upon which to conduct any such review to which Plaintiff might be entitled.

## IV. CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's April 27, 2012 motion for summary judgment (docket #19) is DENIED WITHOUT PREJUDICE. Through an accompanying order, this case will be dismissed without prejudice and remanded for further administrative proceedings in accordance with the rulings in the present opinion and order.


                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court

Dated: January 14, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 14, 2013, by electronic and/or ordinary mail.

                                        s/Julie Owens
                                        Case Manager